**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

GLENN FEDERMAN,

                              Plaintiff,                  5:25-cv-152
                                                      (ECC/ML)

v.

NYSARC, INC. – JEFFERSON COUNTY
CHAPTER,

                              Defendant.

---

Glenn Federman, *Pro Se Plaintiff*
Nicholas P. Jacobson, Esq., *for Defendant*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

Plaintiff Glenn Federman filed this pro se action alleging that Defendant NYSARC, Inc. – Jefferson County Chapter (NYSARC) discriminated against him on the basis of disability in violation of the Americans with Disabilities Act (ADA), retaliated against him in violation of the ADA and Title VII of the Civil Rights Act of 1964 (Title VII), created a hostile work environment in violation of the ADA and Title VII, wrongfully terminated him, and relied on procedural errors by the Equal Employment Opportunity Commission (EEOC). Dkt. No. 1. Presently before the Court is Defendant's motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 7. The motion is fully briefed. Dkt. Nos. 8, 15, 18, 19. For the following reasons, Defendant's motion to dismiss is granted in part and denied in part.

## I.    FACTS[1]

Defendant NYSARC hired Plaintiff Glenn Federman as a registered nurse on approximately September 27, 2023.  Complaint (Compl.) ¶ 13, Dkt. No. 1.  During the hiring process, Plaintiff disclosed that he had "severe autoimmune inflammatory arthritis," "congestive heart failure," and "bilateral joint replacement surgeries."  *Id*. at ¶ 13.  Defendant acknowledged these conditions and informed Plaintiff that accommodations would be provided as needed.  *Id*. at ¶ 14.  Plaintiff's typing speed was not addressed during the hiring process.  *Id*. at ¶ 15.

Plaintiff, who filed lawsuits "against the town, school district, and other entities involv[ing] individuals closely connected to Defendant," before he began working for Defendant, was referred to as "the infamous Glenn Federman" and mocked for his "physical limitations and alleged slow typing speed."  *Id*. at ¶¶ 23, 24.  On approximately October 9, 2023, Plaintiff requested a larger keyboard to use with his laptop computer because of his large arthritic hands, and he did not receive one.  Compl. at 9.[2]  On October 19, 2023, Plaintiff received a text message from the Nursing Supervisor that all new RNs were "immediately provided with remote computer access."  *Id*.  The supervisor wrote, "I think I might have messed up the IT request when you started" and apologized for Plaintiff's lack of remote access.  *Id*.  Plaintiff received remote access the following day, and that was almost one month after he received his computer.  *Id*. at 10.

On December 12, 2023, Plaintiff "investigated and reported serious concerns about a [patient] experiencing significant weight loss" based on an email from the patient's family

---

[1] These facts are drawn from the Complaint.  Dkt. No. 1.  The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Page numbers refer to the pagination generated by ECF, unless otherwise noted.

member, and Plaintiff also "investigated and reported medication shortages."  Compl. ¶ 18. Plaintiff "documented his findings" and communicated them to the Residence Manager and nursing supervisor by email.  *Id.* at ¶ 19.  The nursing supervisor then wrote "a critical email about Plaintiff."  *Id*. at ¶ 20.

On December 13, 2023, Plaintiff "developed and implemented a comprehensive CPAP [continuous positive airway pressure] training session at the residence for PWS [Persons We Support]" outside of normal working hours.  Compl. ¶¶ 4, 16 and page 12.  The following day, Plaintiff "was summoned to an abrupt termination meeting," and he was terminated.  *Id*. at ¶ 21. Plaintiff was 11 days from the end of his probationary period.  *Id*. at ¶ 22.

Plaintiff filed a charge with the EEOC related to his termination, which was closed on December 30, 2023.  Compl. ¶¶ 26, 28.  Plaintiff received a Notice of Right to Sue from the EEOC on January 2, 2025.  *Id*. at ¶ 29.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc*., 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555).  A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See EEOC v. Port Auth*., 768 F.3d 247, 253 (2d Cir. 2014)

3

(citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

When evaluating a discrimination claim at the motion to dismiss stage, courts are instructed that "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss;" but "it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC*, 768 F.3d at 254 (quoting *Iqbal*, 556 U.S. at 680) (cleaned up).

"'*Pro se* complaints are held to less stringent standards than those drafted by attorneys,'" and courts are "'required to read [a] plaintiff's *pro se* complaint liberally, interpreting it as raising the strongest arguments it suggests.'" *Green v. McKoy*, No. 9:22-cv-44 (LEK), 2023 WL 2742143 at *9 (N.D.N.Y. Mar. 31, 2023) (quoting *Johnson v. Darby,* 142 F. Supp.3d 275, 277 (E.D.N.Y. 2015)). "However, while the special leniency afforded to *pro se* . . . litigants somewhat loosens the procedural rules governing the form of pleadings, it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in the Federal Rules." *Id.* (quoting *Vega v. Artus*, 610 F. Supp. 2d 185, 195–96 (N.D.N.Y. 2009) (cleaned up)). Although "the Second Circuit has repeatedly 'said that a *pro se* litigant is entitled to 'special solicitude'" but "it has also indicated that [courts] cannot read into *pro se* submissions claims that are not 'consistent' with the *pro se* litigant's allegations or arguments that the submissions themselves do not 'suggest.'" *Green*, 2023 WL 2742143 at *9 (quoting *Triestman v. Fed. Bur. Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)).

### III.   DISCUSSION

#### A.   Claims

The Complaint alleges five claims: ADA disability discrimination, ADA and Title VII retaliation, ADA and Title VII hostile work environment, "Wrongful Termination During Probation," and "Procedural Failures by the EEOC." Compl. ¶¶ 31-35. The Complaint also asks that the Court declare "Defendant's actions unlawful under the ADA, Title VII, ADEA, and NYSHRL." *Id*. at 5. To the extent the Complaint can be read to assert a claim under the Age Discrimination in Employment Act (ADEA), the Court will also address that claim. *See* Defendant's Motion to Dismiss (Def. Mot.) at 20, Dkt. No. 8; Plaintiff's Response Memorandum of Law (Pl. Resp.) at 11, Dkt. No. 15; Defendant's Reply Memorandum of Law (Def. Reply) at 7-8, Dkt. No. 18.

Under the heading "Count IV: Wrongful Termination During Probation," Plaintiff alleges that "Defendant terminated Plaintiff 11 days before the end of his probationary period and 2 days after he exposed serious patient safety issues, constituting wrongful termination." Compl. ¶ 34. Wrongful termination during probation is not an independent cause of action. "New York has a well-established at-will employment doctrine: '[A]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.'" *Albert v. Loksen*, 239 F.3d 256, 264 (2d Cir. 2001) (quoting *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333 (1987)). In other words, both the employer and employee may terminate the employment relationship at any time for any reason or

for no reason whatsoever, unless otherwise prohibited by law.  Termination during a probationary period is not itself unlawful.  Count IV is therefore dismissed.[3]

Under the heading "Count V: Procedural Failures by the EEOC," Plaintiff states that "Defendant relied on procedural errors by the EEOC to undermine Plaintiff's ability to fully pursue his claims, constituting a failure of administrative due process."  Compl. ¶ 35.  The EEOC is not a party to this lawsuit.  In addition, the Complaint does not contain any factual allegations suggesting that any procedural errors by the EEOC could be attributed to Defendant.  Furthermore, there is no cause of action for "procedural failures" by the EEOC where the EEOC is not a party.  Count V is therefore dismissed.

## B.    Discrimination Claims

Plaintiff alleges that "Defendant failed to provide reasonable accommodations and engaged in discriminatory practices, in violation of the ADA."  Compl. ¶ 31.  Defendant notes that while the Complaint is "somewhat unclear," it "could be read to allege both that [Plaintiff] was denied reasonable accommodations and that [Plaintiff] was terminated from his employment due to his disability in violation of the Americans with Disabilities Act."  Def. Mot. at 11.

### 1.  ADA Discriminatory Termination

Plaintiff argues that his termination was "part of a broader discriminatory pattern" and alleges that Defendants "engaged in discriminatory practices, in violation of the ADA."  Pl. Resp. at 10; Compl. at ¶ 31.  Defendant denies that Plaintiff was terminated for discriminatory reasons, and relies on Plaintiff's termination notice listing non-discriminatory reasons why Plaintiff was terminated.  Def. Mot. at 14-15; *see also* Compl. at 38.

---

[3] To the extent that Plaintiff suggests that his termination was unlawful discrimination or retaliation, that is addressed with the discrimination and retaliation claim analysis.

6

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees," as well as "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A prima facie discrimination claim requires the plaintiff to show that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 486 (S.D.N.Y. 2017) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)). A "plaintiff alleging disability discrimination 'is not required to plead a prima facie case . . . to defeat a motion to dismiss,'" and she "'need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage.'" *Id.* at 486–87 (quoting *Dooley v. JetBlue Airways Corp.*, 636 Fed. App'x 16, 21 (2d Cir. 2015) (summary order)); *see also Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (summary order) ("To state a claim for discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, *inter alia*, that she suffered [an] adverse employment action because of [her] disability.").

The ADA covers employers "engaged in an industry affecting commerce" who employ 15 or more employees. 42 U.S.C. § 12111(2), (5). Defendants do not dispute that Defendant is an entity covered by the ADA. *See* Def. Mot. at 11-15. For purposes of the present motion, the Court will assume that Defendant is a covered entity.

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Defendants argue that Plaintiff "failed to plausibly

allege facts sufficient to plausibly demonstrate that he was substantially limited in a major life activity, and his ADA claims must be dismissed." Def. Mot. at 13.

To establish a disability, a plaintiff must: (1) 'show that she suffers from a physical or mental impairment'; (2) 'identify the activity claimed to be impaired and establish that it constitutes a major life activity'; and (3) 'show that her impairment substantially limits the major life activity previously identified.'" *Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154, 163 (S.D.N.Y. 2020) (quoting *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002)). A physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems."[4] 29 C.F.R. § 1630.2(h)(1). Major life activities are non-exclusively defined to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," in addition to "the operation of a major bodily function." 42 U.S.C. § 12102(2).

To qualify as a disability, an impairment must "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population"; but "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). "The term 'substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." *Id.* § 1630.2(j)(1)(i).

---

[4] The EEOC regulations implementing the ADA and its subsequent amendments, 29 C.F.R. § 1630.1, "are not binding," but "courts in the Second Circuit afford them significant deference." *Norman*, 492 F. Supp. 3d at 163 (citing *Francis v. City of Meriden*, 129 F.3d 281, 283 n.1 (2d Cir. 1997)).

Plaintiff alleges that he has "autoimmune inflammatory arthritis, congestive heart failure (CHF), and bilateral joint replacement surgeries."[5]  Compl. ¶ 13.  In Exhibit C to the Complaint, Plaintiff alleges that he requested a larger keyboard due to his "large arthritic hands."  Compl. at 9.  Plaintiff has not alleged that congestive heart failure or joint replacement surgeries have impacted any major life activities.  Reading the Complaint to "rais[e] the strongest arguments it suggests," Plaintiff has plausibly alleged that arthritis in his hands is a physical impairment and that this impairment substantially limits his ability to type.  *Green*, 2023 WL 2742143 at *9.  This is sufficient to survive a motion to dismiss.[6]  *See Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020)

Plaintiff alleges that he would have been capable of performing the essential functions of the job with accommodations such as a larger keyboard and remote access.  Compl. at ¶ 14 and pages 9-10.  Finally, termination is an adverse employment action.  *Feingold v. New York*, 366 F.3d 138, 160 (2d Cir. 2004).  Defendant does not dispute that a termination occurred, but argues that it was not related to Plaintiff's disability.  Def. Mot. at 14-15.  Plaintiff alleges that he was terminated for reporting patient safety issues.  Compl. at ¶ 34.  Plaintiff also attached and incorporated by reference the email from the nursing supervisor listing performance failures unrelated to disability.  *Id.* at 38.  Finally, Plaintiff disclosed his medical conditions, including

---

[5] Plaintiff also argues that he has bipolar disorder, Pl. Resp. at 5, but the Court may not consider that argument because the Complaint does refer to bipolar disorder.

[6] At a later stage of litigation, such as a summary judgment motion, additional facts would be necessary to determine whether Plaintiff's arthritis substantially limited his ability to work. *Compare Greenbaum v. New York City Transit Auth.*, No. 21-1777, 2022 WL 3347893 at *2 (2d Cir. Aug. 15, 2022) (concluding that there was a genuine dispute of material fact as to whether permanent wrist tendonitis restricting plaintiff from typing or clicking for more than 30 minutes at a time and no more than four hours a day was a disability for purposes of the ADA) *with Parker v. Israel Disc. Bank of New York, Inc.*, No. 21-cv-7196, 2024 WL 455220 at *5-6 (S.D.N.Y. Feb. 6, 2024) (concluding as part of a summary judgment motion that a finger injury did not substantially limit plaintiff's ability to perform a wide range of jobs), aff'd in part, vacated in part, remanded, No. 24-688-CV, 2025 WL 1779219 (2d Cir. June 27, 2025).

arthritis, congestive heart failure, and bilateral joint replacement surgeries when he was hired.  *Id*. at ¶ 13.

Given that Defendant knew about Plaintiff's disability when he was hired, and that was approximately three months before his termination, this fact weighs significantly against any inference of discrimination.  *See Browne v. CNN Am., Inc.*, No. 98-cv-1768, 1999 WL 1084236 at *2 (S.D.N.Y. Dec. 1, 1999), *aff'd*, 229 F.3d 1135 (2d Cir. 2000) ("In assessing Browne's claim that his termination was based on his age and disability, it must be noted at the outset that both of these factors were known to CNN when it hired him only sixteen months earlier. This fact significantly undercuts any inference of discrimination.").  Plaintiff has therefore not introduced sufficient factual allegations to support an inference that his termination was related to his disability, and Defendant's motion to dismiss Plaintiff's discriminatory termination claim is therefore granted.

### 2.  ADA Failure to Accommodate

A prima facie failure-to-accommodate claim requires the plaintiff to show: "(1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (quotation omitted).  "The ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated," but "the ADA imposes liability for, *inter alia,* discriminatory refusal to undertake a feasible accommodation, not mere refusal to explore possible accommodations where, in the end,

no accommodation was possible." *McBride*, 583 F.3d at 99, 100 (cleaned up) (quoting *Jackan v. New York State Dep't of Lab.,* 205 F.3d 562, 566 (2d Cir. 2000)) (additional quotations omitted).

As discussed above, Plaintiff has plausibly alleged that he is disabled and that Defendant was aware of his disability. Plaintiff alleges that Defendant refused to provide him with remote access, but that allegation is not supported by the Complaint. According to the Complaint, when Plaintiff told the nursing supervisor that he did not have remote access, the nursing supervisor responded, "I think I might have messed up the IT request when you started" and apologized for Plaintiff's lack of remote access. Compl. at 9. Plaintiff received remote access the following day. *Id*. at 10. Given Plaintiff's admission that he received remote access the day after he told the nursing supervisor that he did not have it, the Complaint does not sufficiently allege failure to accommodate on that basis.

Plaintiff alleges that he repeatedly asked for a larger keyboard, and Defendant did not provide one. Compl. at 9. Although "[t]he job description for Plaintiff's role did not include typing speed or performance as an essential duty, and no testing or discussion of typing skills occurred during the interview process," *id*. at ¶ 15, the email recommending that Plaintiff be terminated states, "Computer skills are severely lacking which leads to simple tasks taking an extended period of time," *id*. at 38. At this stage of the litigation, this is sufficient to support an inference that computer skills, including typing, form an essential function of the job. The Complaint therefore plausibly alleges that Plaintiff made a request for reasonable accommodation to help Plaintiff perform the essential functions of the job and that Defendant refused to make this accommodation. Defendant's motion to dismiss Plaintiff's ADA failure to accommodate claim on the basis of the keyboard is denied.

### 3. ADEA Discrimination

11

The Complaint may imply a claim that Plaintiff's termination was discriminatory on the basis of age. To establish an ADEA discrimination claim, a Plaintiff must show: "(1) that the employee is a member of the protected class, (2) that the employee is qualified for the position, (3) that the employee suffered adverse employment action, and (4) that the circumstances surrounding the action give rise to an inference of age discrimination." *Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 71 (2d Cir. 2004).

The parties do not dispute that Plaintiff is a member of the class protected by ADEA or that Plaintiff suffered an adverse employment action when he was terminated. Def. Mot. at 20-21. Even if Plaintiff were qualified for the position, however, the Complaint does not contain any evidence supporting an inference of age discrimination.

When Plaintiff was hired, he was only three months younger than when he was terminated. Compl. at ¶¶ 13, 21. Courts have held that termination shortly after hiring is a strong indication that the termination was not on the basis of age because the initial hiring decision suggests that the employer was willing to employ a person of that age. *See Boyce v. Bank of New York*, 226 F. App'x 17, 19 (2d Cir. 2006) ("the fact that the supervisor who terminated [plaintiff] was the same person who, less than two and half years earlier, had hired her further undermines [plaintiff's] claims of discrimination"); *see also Browne*, 1999 WL 1084236 at *2 (explaining that the fact that the employer knew plaintiff's age when he was hired 16 months before he was fired "significantly undercuts any inference of discrimination"). Furthermore, the email articulating grounds for Plaintiff's termination does not mention Plaintiff's age or any factors related to his age. Compl. at 38. As a result, Plaintiff has not alleged sufficient facts to state a claim for ADEA discrimination on the basis of age.

### C. Retaliation

Plaintiff alleges retaliation claims under both the ADA and Title VII. Compl. at ¶ 32. To state a prima facie case of ADA retaliation, Plaintiff must allege that "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Title VII retaliation claims are similar, and Plaintiff must allege that "(1) he or she participated in protected activity, (2) the defendant knew of the protected activity, (3) the plaintiff suffered an adverse employment action, and (4) there was a causal connection between the protected activity and adverse employment action." *Foy v. N.Y. State Unified Ct. Sys.*, 740 F.Supp.3d 136, 148 (E.D.N.Y. 2024) (*citing Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012)). "'Protected activity is action taken to protest or oppose statutorily prohibited discrimination.'" *Shannon v. Credit Agricole Sec. (USA), Inc.*, No. 17-cv-667, 2021 WL 1063183, at *9 (S.D.N.Y. Mar. 19, 2021) (quoting *Natofsky v. City of New York,* 921 F.3d 337, 354 (2d Cir 2019) (quotations omitted)).

Here, Plaintiff has not alleged that he engaged in activity protected by the ADA or Title VII because he has not alleged that he took action "'to protest or oppose statutorily prohibited discrimination.'"[7] *Shannon,* 2021 WL 1063183, at *9 (quoting *Natofsky,* 921 F.3d at 354) (quotations omitted). Plaintiff alleges that Defendant retaliated against him because of lawsuits that he previously filed. Compl. at ¶¶ 23-24. But he does not allege how those suits are protected activity under the ADA or Title VII, their subject matter, or how they could be protected activity when they were filed against entities that are not parties to this suit.

---

[7] The Complaint does not allege or suggest that Plaintiff was terminated in retaliation for his keyboard request. Compl. at ¶¶ 18-22.

Plaintiff also alleges that Defendant retaliated against him because he investigated issues with a patient's weight loss and possible medication concerns. *Id*. at ¶ 18. However, that is not "protected activity" under the ADA or Title VII. Given that Plaintiff has not plausibly alleged that he engaged in protected activity under any applicable statute, Plaintiff's retaliation claims are dismissed.

### D. Hostile Work Environment

Defendant argues that Plaintiff has failed to demonstrate a hostile work environment beyond stray remarks. Def. Mot. at 19-20. Plaintiff responds that Defendant's conduct "establish[es] a pattern of discriminatory hostility, especially in light of Plaintiff's known disability and protected activity." Pl. Resp. at 11.

To establish a hostile work environment claim under Title VII, Plaintiff must demonstrate harassment on the basis of a protected characteristic, and "that [his] [] workplace was 'so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of . . . [his] employment were thereby altered.'" *Agosto v. N.Y. City Dep't of Educ.*, 982 F.3d 86, 101 (2d Cir. 2020) (quoting *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013)). The hostile work environment standard includes "both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).

ADA hostile work environment claims require similar proof by a plaintiff: "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the

objectionable conduct to the employer." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (quoting *Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir 2002) (additional quotations omitted).

To determine whether conduct is "severe or pervasive," courts review "the totality of the circumstances," including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Banks v. General Motors, LLC,* 81 F.4th 242, 262 (2d Cir. 2023) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "Isolated incidents of harassment ordinarily do not rise to this level," *id.* (quoting Cruz, 202 F.3d at 570) (citation omitted), but the Second Circuit has "recognized that 'a single act can create a hostile work environment if it in fact 'works a transformation of the plaintiff's workplace.'" *Id.* (quoting *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)) (alteration adopted)).

"Title VII does not impose 'a general civility code for the American workplace.'" *McNamara v. County of Saratoga*, 748 F. Supp. 3d 68, 89 (N.D.N.Y. Sept. 12, 2024) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)); *see also Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 447 (E.D.N.Y. Sept. 23, 2013) ("While 'the central statutory purpose [of Title VII was] eradicating discrimination in employment, Title VII does not set forth a general civility code for the American workplace.'") (quoting *Redd v. New York Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012)).

Neither of the two comments alleged in the Complaint—"[b]eing referred to as 'the infamous Glenn Federman,' stigmatizing him due to his lawsuits," or "[m]ocking his physical limitations and alleged slow typing speed," meet these standards even for purposes of a motion to dismiss.  Compl. at ¶ 24.  The comment about Plaintiff's "infamy" is not related to his disability

15

or his sex, and is therefore not considered. *See Serrano v. New York State Dep't of Env't Conservation*, No. 12-cv-1592 (MAD), 2017 WL 1194238, *3 (N.D.N.Y. Mar. 30, 2017), *aff'd*, 714 F. App'x 90 (2d Cir. 2018) ("'[i]n evaluating a hostile work environment claim, a court may not consider incidents unrelated to the plaintiff's protected characteristics.'") (quoting *Guerra v. Murphy*, No. 15–cv–1168, 2016 WL 7480405, *7 (N.D.N.Y. Dec. 29, 2016)).  Even viewing the "mocking" allegation in the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, this allegation falls short of alleging "nonconclusory factual matter sufficient to nudge [his] claims across the line from conceivable to plausible" for purposes of the "severe or pervasive" standard. *EEOC,* 768 F.3d at 254 (quoting *Iqbal,* 556 U.S. at 680) (cleaned up); *Alfano*, 294 F.3d at 379-80.

### E.  Leave to Amend

"'Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir.2000)). "'A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Id*. (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.2010)).

Here, Plaintiff may be able to allege additional facts to support the dismissed claims. Plaintiff may file an amended complaint within thirty days.  If Plaintiff fails to file an amended complaint within the thirty-day deadline, the Clerk of the Court is respectfully directed to close this case without further order from the Court.  Any amended complaint will replace the existing complaint; it must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court.  *See Shields v.*

16

*Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citation omitted).  If Plaintiff decides to file an amended complaint, he should consult Federal Rule of Civil Procedure 15 and the Northern District of New York's Local Rule 15.1.

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss under Rule 12(b)(6), Dkt. No. 7, is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that Plaintiff's claims of discriminatory termination under the ADA, retaliation under the ADA and Title VII, hostile work environment under the ADA and Title VII, "wrongful termination during probation," "procedural failures by the EEOC," and any discrimination claim arising under ADEA are **DISMISSED without prejudice**, and it is further

**ORDERED** that Defendant's motion to dismiss under Rule 12(b)(6), Dkt. No. 7, is **DENIED** as to Plaintiff's claim of a failure to accommodate his disability under the ADA.

**IT IS SO ORDERED.**

Dated: March 16, 2026

Elizabeth C. Coombe
U.S. District Judge